25 C.C.P.A. (Patents)

### Application of LANGDON.
### Patent Appeal No. 5336.

Court of Customs and Patent Appeals.
Nov. 17, 1947.

Jesse D. Langdon, pro se.

W. W. Cochran, of Washington, D. C. (H. S. Miller, of Washington, D. C., of counsel), for the Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, JACKSON, and O'CONNELL, Associate Judges.

GARRETT, Presiding Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming the examiner's rejection of a claim numbered 17 in appellant's application for patent "for Stop, Cock and Check Valves." It appears that, as stated by the examiner, the "device is a valve arrangement for admitting water to a toilet flush tank."

The record discloses that the application was amended several times during its prosecution in the Patent Office and that claims other than that here at issue were presented at different times, but as finally acted upon by the examiner only claim 17 was involved. It reads:

"17. A stop, cock and check valve comprising a casing having an inlet and an outlet, said inlet having an inlet port of relatively small area as compared to a chamber forming a greatly enlarged passage contiguous therefrom, to slow up the velocity of pressure fluid passing the chamber holding back an appreciably large volume of relatively slow moving fluid in said chamber prior to passing thru a relatively small outlet passage communicating from said chamber into another greatly enlarged chamber wherein a relatively large volume of fluid is held and the velocity of flow reduced with respect to the last named passage; the inlet port being closed by an adjustable valve member, the passage from the first named chamber being closed by a float actuated valve member, the second named chamber having the outlet of the casing leading therefrom, *said outlet being formed by an elastic member having a normally closed restricted terminal passage surrounded by elastic material* whereby the flow of water is effected to keep the last named chamber filled with fluid at all times when fluid under pressure is flowing thru the casing, regardless of the rate of flow thru the inlet." (Italics supplied.)

The references cited are:

Watrous, 1,609,337, December 7, 1926.
Woolley, 1,857,800, May 10, 1932.
Shanley, 2,056,807, October 6, 1936.
Groeniger, 2,092,757, September 14, 1937.

We have italicized the limitation upon which appellant relies for patentability, it being in effect conceded that all other elements of the claim are old in the art.

The statement of the examiner following the appeal to the board discloses that the examiner applied several grounds of rejection, but the board expressly overruled all grounds except one based on prior art expressed in the pertinent portion of the examiner's statement as follows:

"Claim 17 * * * is * * * rejected as unpatentable over either Watrous or Woolley in view of Groeniger since it would not amount to invention to equip the Watrous outlet conduit 22 or the Woolley outlet conduit 61 with the Groeniger anti-siphon device. As is made clear by Figures 1 and 3 of Shanley, an anti-siphon device which is suitable for a flush valve and bowl connection is also suitable for a flush tank outlet conduit."

From the drawing and specification considered in connection with the claim, it appears that appellant's stop, cock and check valve are enclosed within a casing which has an inlet and an outlet. The inlet has a supply tube or inlet port that is controlled by an adjustable valve member. An outlet, which appellant insists is not the outlet contemplated by the claim, is identified by the numeral 3. It has what the specification designates as an outlet tube projecting from it.

The specification recites:

"The illustrated assembly consists of a casing, 1, having an inlet, 2, with a supply tube extended therefrom and an outlet, 3, with an outlet tube-3a-projecting therefrom * * *."

The brief of the Solicitor for the Patent Office states:

"Briefly, by way of summarizing, the stop, cock, and check valve * * * shown in the drawing * * * includes a casing 1 with an inlet 2 and an outlet 3 * * *."

The brief then further recites, in substance, that the inlet port which is controlled by a valve member allows pressure fluid to enter the chamber surrounding the valve member, the fluid having exit through an outlet passage. A chamber surrounding the valve member is closed by a float which is actuated by another valve member, the stem of which is surrounded by an enlarged chamber which communicates with the outlet (designated by the numeral 3) of the casing through an elastic member (identified by the numeral 7) which elastic member is described in the limitation of the claim which we have italicized as having "a normally closed restricted terminal passage." In the drawing the restricted passage, indicated by a numeral 7b, is shown in closed position. It is said in the specification:

"When water under pressure is flowing through the device the tubular portions of the flanged flexible member is expanded to close the air vents, 3b, and acts as a check valve to prevent the excess of water from said air vents, 3b."

It may be further said that the elastic member is described in the specification as being tubular and as becoming a "check valve against atmospheric pressure or fluid in the outlet entering the body." As we understand it, the "body" is the part elsewhere referred to in the specification as the casing. From the drawing and specification it is deduced that when the water flows out of the tubular member it passes through the outlet tube which projects from the outlet in the casing.

However, appellant insists that the outlet from the casing is not the outlet referred to in the opening clause of the claim reading, "A stop, cock and check valve comprising a casing having an inlet and an outlet," but that such outlet is the "normally closed restricted terminal passage" at the lower end of the tubular shape elastic member, which passage is shown in closed position in the drawing.

One of the grounds upon which the examiner rejected the claim was that it is vague and indefinite. The board felt that "the claim is understandable" and overruled that ground of rejection so that it is not here involved.

Upon this point the board said, inter alia:

"We have read the claim carefully in connection with the illustration on the drawing and it appears to us that the claim defines the inlet, the outlet, the several chambers therebetween and the passages connecting these chambers and their relative sizes. The claim also includes the adjustable valve member, the float actuated valve member and the elastic member in the outlet passage. It appears to us that the claim is understandable as written and since the examiner has not pointed out any particular part or parts of the claim which are rendered vague and indefinite because of the phrasing used, we cannot sustain this ground of rejection."

While the general features mentioned by the board, of course, are apparent from the text of the claim, we confess that we have experienced some difficulty relative to details, and appellant's brief and oral argument (he appeared pro se and was not represented by counsel) have not been as clarifying as could be wished.

It seems obvious to us, for example, that normally and naturally the "outlet" contemplated by use of the term in the second line of the claim is the outlet through the casing, but it also seems to us that even if we accept appellant's contention that it, in fact, means the restricted passage in the elastic member it is a feature which properly may be held to be anticipated by the Groeniger patent, in view of the broad language of the limitation upon which appellant relies—[an outlet] "formed by an elastic member having a normally closed restricted terminal passage surrounded by elastic material." It may be conceded that there are structural differences between the emphasized feature of appellant and the resilient valve member shown by Groeniger, but such differences are not identified by any language in the claim. As is pointed out in the brief of the Solicitor for the Patent Office, when the respective elastic elements are closed, which apparently is their normal position, there is no passage, but when opened there is a passage. In the valve of Groeniger the passage is surrounded by elastic material between elastic lips placed between slits, the lips being also of resilient material, and similarly in appellant's device there is a passage when, and only when, the ends of his tubular resilient member opens.

It may be conceded, as is argued by appellant, that Groeniger's valve opens wider than does the terminal passage in appellant's elastic member, but there is nothing in the claim which defines any particular width for the passage.

In addition to Groeniger, the board followed the examiner in citing the Shanley patent as a proper reference upon the feature of an anti-siphon element which appellant, in a reply brief to the brief of the Solicitor for the Patent Office, states is one of two functions performed by his elastic member. It is true that he asserts in the brief that this function is performed under "abnormal i. e. vacuum condition" and that "claim 17 is not concerned with such abnormal function." Whatever may be the proper interpretation of the function of that which appellant discloses, it is clear, we think, that the element itself is anticipated by both Groeniger and Shanley.

As the Solicitor for the Patent Office points out, there is "no adequate traverse" of the holding of the examiner (approved by the board) relative to the Shanley showing.

So far, we have devoted attention practically exclusively to appellant's elastic member because it is that upon which he solely relies to give patentability to his combinations. It is not deemed necessary to enter into a lengthy description of the Watrous and Woolley patents because it is not seriously questioned that they disclose all the elements (or their equivalents) of the claim except the elastic member, and that, as held by the board, is disclosed by Groeniger.

The decision of the Board of Appeals is affirmed.

Affirmed.